**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Subpoenas to Leeds Equity Partners and Jacques Galante* | Misc. No. 25-mc-79<br><br>Related to *UWorld, LLC fka USMLEWorld, LLC, v. USMLE Galaxy, LLC DBA Archer Review and Tart Labs*, No. 3:23-cv-00447 (N.D. Tex.)<br><br>**ORAL ARGUMENT REQUESTED** |

**NON-PARTIES LEEDS EQUITY PARTNERS' AND JACQUES GALANTE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENAS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................2

A. The Parties ....................2
B. The UWorld/Archer Litigation ....................3
C. UWorld's Subpoenas to Leeds and Mr. Galante ....................4

ARGUMENT ....................6

I. THE SUBPOENAS SHOULD BE QUASHED ....................7

A. The Subpoenas Seek Irrelevant Information ....................7
B. The Subpoenas Seek Information in Archer Review's (and UWorld's) Possession ....................9
C. The Subpoenas Seek Depositions in Excess of UWorld's Ten-Deposition Limit ....................12

II. ALTERNATIVELY, THE COURT SHOULD MODIFY THE SUBPOENAS ....................13

CONCLUSION ....................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
No. 20-mc-23, 2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020) ....6, 7

*Athalonz, LLC v. Under Armour, Inc.*,
No. 24 MISC. 0047 (DEH), 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024) ....8, 10

*C.A. v. Amli at Riverbend LP*,
2008 WL 1995451 (S.D. Ind. May 7, 2008) ....12

*Catlin Syndicate 2003 v. Traditional Air Conditioning, Inc.*,
No. 17-cv-2406, 2018 WL 1459483 (E.D.N.Y. Mar. 23, 2018) ....10

*Cerco Bridge Loans 6 LLC v. Schenker*,
No. 23 Civ. 11093, 2024 WL 4165128 (S.D.N.Y. July 16, 2024) ....7, 10

*Edmonson v. RCI Hospitality Holdings, Inc.*,
No. 16-CV-2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018) ....8

*Farley v. United States*,
No. 11CV198S, 2015 WL 3952295 (W.D.N.Y. June 29, 2015) ....12

*Free Stream Media Corp. v. Alphonso Inc.*,
No. 17-cv-02107-RS (KAW), 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017) ....9

*Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*,
No. 14-cv-1011, 2014 WL 6472885 (D. Kan. Nov. 18, 2014) ....6

*Haber v. ASN 50th St., LLC*,
272 F.R.D. 377 (S.D.N.Y. 2011) ....7

*Hasbro, Inc. v. Serafino*,
168 F.R.D. 99 (D. Mass. 1996) ....10

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
928 F. Supp. 2d 748 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013) ....10

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
No. 16-CV-1318 (GBD)(BCM), 2018 WL 6712769 (S.D.N.Y. Nov. 30, 2018) ....9

*Kirschner v. Klemons*,
No. 99 Civ. 4828, 2005 WL 1214330 (S.D.N.Y. Apr. 10, 2024) ....7

*Leadenhall Cap. Partners LLP v. Wander*,
No. 24-cv-3453 (JGK), 2024 WL 4904711 (S.D.N.Y. Nov. 26, 2024)....14

*Maxtena, Inc. v. Marks*,
289 F.R.D. 427 (D. Md. 2012)....9

*Recoop LLC v. Outliers Inc.*,
No. 24-cv-01810 (LJL), 2024 WL 4467540 (S.D.N.Y. Oct. 10, 2024)....13

*Seven Z Enters. v. Giant Eagle, Inc.*,
No. 2:17-CV-740, 2020 WL 7240365 (W.D. Penn. Mar. 6, 2020)....9

*Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*,
No. 06-cv-1501, 2007 WL 4166035 (S.D.N.Y. Nov. 20, 2007)....6

*UMB Bank, N.A. v. Sanofi*,
No. 15-cv-8725, 2017 WL 6398628 (S.D.N.Y. Nov. 22, 2017)....6

*UWorld, LLC v. USMLE Galaxy, LLC et al.*,
Case No. 3:23-cv-00447 (N.D. Tex. 2023)....2

*Warnke v. CVS Corp.*,
265 F.R.D. 64 (E.D.N.Y. 2010)....10

*Weiner v. Blackstone Partners, L.P.*,
No. 04 Civ. 7757, 2005 WL 1560505 (S.D.N.Y. June 30, 2005)....11

**RULES**

Fed. R. Civ. P.
26(c)(i)....10
30....2, 7, 12
30(a)(2)(A)(i)....12
45(d)(3)....6
45(d)(3)(A)(iv)....6

**PRELIMINARY STATEMENT**

This motion to quash arises out of an intellectual property and business disparagement litigation between two competing online education companies—UWorld, LLC ("UWorld") and USMLEGalaxy, LLC ("Archer Review")—that was brought in February 2023 and relates to purported misconduct that allegedly occurred between 2017 and 2023. It is undisputed that non-parties Leeds Equity Partners ("Leeds") and Jacques Galante had no involvement whatsoever in any of the events underlying the litigation between UWorld and Archer Review. Instead, Leeds and Mr. Galante's sole connection to any party in the underlying litigation is that, in November 2024—roughly a year and a half ***after*** the litigation was filed—Leeds purchased a majority stake in Archer Review. Evidently hoping to use the existence of the lawsuit to explore details about its competitor's business dealings, UWorld has attempted to seek broad discovery into Leeds' acquisition of a majority stake in Archer Review. Most recently, these efforts included the service of two subpoenas against Leeds and Mr. Galante—a partner at Leeds—seeking deposition testimony on a wide variety of topics related to the Leeds acquisition, none of which actually pertain to any claims or defenses in the underlying litigation.

The Court should quash these deposition subpoenas. As an initial matter, UWorld could never sustain its burden of showing that these subpoenas actually seek information that is relevant to the claims and/or defenses in its litigation with Archer Review. Leeds and Mr. Galante have no relevant information to that case. Their involvement with Archer Review started long after the events at issue had already taken place. Moreover, to the extent the subpoenas touch on any relevant information at all, it could only be information in ***Archer Review's*** possession, meaning that UWorld can and must seek it from Archer Review. And UWorld has had ample opportunity to do so in the more than a year of discovery that has already taken place in the litigation, including a recent deposition of Archer Review's CEO, Dr. Karthik Koduru. Finally, UWorld's subpoenas

are all the more inappropriate because UWorld seeks to take two depositions—one from Leeds and one from Mr. Galante—even though doing so would exceed its limit under Federal Rule of Civil Procedure 30.

## BACKGROUND

### A. The Parties

Plaintiff UWorld was founded in 2005 and offers online educational resources in the fields of medicine, nursing, teaching, accounting, finance, high school, graduate school, law, and pharmaceuticals. (Ex. 1, Third Amended Complaint ("TAC"), Dkt.[1] 124 ¶¶ 28, 31.) UWorld's educational resources include preparatory materials for professional licensing exams, such as the National Council Licensure Examination ("NCLEX") for licensing of nurses ("NCLEX-RN"). (*Id.* ¶¶ 2, 4.) Specifically, among UWorld's "programs and services are its online QBank. . .which feature[] thousands of questions, with corresponding answer explanations" that students can use to prepare for their exams. (*Id.* ¶ 39.)

Defendant Archer Review was founded in 2009 and also offers online educational resources and test preparatory services. (Ex. 2, Archer Review's Answer to Plaintiffs' Third Amended Complaint, Affirmative Defenses, and Second Amended Counterclaim ("Counterclaims"), Dkt. 129, ¶ 6.) In 2019, Archer Review expanded its offerings to nursing students preparing to take the NCLEX-RN—the licensing exam for nurses. (*Id.*) Today, Archer Review's variety of preparatory products includes a question bank containing practice questions and explanations, live review, on-demand video courses, predictive assessments, and live tutoring. (*Id.* ¶ 7.)

---

[1] Unless otherwise noted, all citations to "Dkt." are to docket entries in *UWorld, LLC v. USMLE Galaxy, LLC et al.*, Case No. 3:23-cv-00447 (N.D. Tex. 2023), all citations to "Ex." are to exhibits appended to the declaration of Nathan Taylor filed contemporaneously herewith, all emphasis is added, and all citations and quotations are omitted.

Defendant Tart Labs is a software application and development company. On August 1, 2019, Tart Labs contracted with Archer Review in order to "design, develop, and deliver" Archer Review's NCLEX-RN study program for nursing students. (Dkt. 124 ¶¶ 18, 95–96.)

Leeds is a private equity firm that operates a family of funds that invest in Knowledge Industries. Mr. Galante is a partner at Leeds. Neither Leeds nor Mr. Galante is a party to the underlying litigation.

**B. The UWorld/Archer Litigation**

In 2021 and 2022 Archer Review experienced significant growth, which it attributes to its success in helping nursing students pass the NCLEX-RN and the resulting customer loyalty and affinity from providing such an effective product offering for nurses. (Dkt. 129 at ¶ 13.) In the course of Archer Review's growth during this period, a number of disputes arose between Archer Review and UWorld, of which Archer Review became a significant competitor. These disputes ultimately culminated in UWorld bringing a lawsuit against Archer Review on February 27, 2023 in the United States District Court for the Northern District of Texas (the "UWorld/Archer Litigation").

In the UWorld/Archer Litigation, UWorld alleges misconduct by Archer Review dating from 2017 up to 2023. UWorld primarily asserts federal and state claims related to (1) its assertion that Archer Review's NCLEX-RN study products—which it launched in 2009—purportedly infringed upon UWorld's trade dress and (2) that Archer Review's products purportedly used certain copyrighted medical illustrations owned by UWorld without permission. (Dkt. 124 at ¶ 12.) UWorld also asserts claims based on its allegation that Archer Review unlawfully accessed UWorld's products to allegedly "take screenshots, screen record, or otherwise mine or scrape details" in 2017 (*Id.* ¶¶ 103, 107–08, 11–113, 119, 320), and that Archer Review purportedly

unlawfully employed an influencer to advertise for Archer Review on social media. (*Id.* ¶¶ 174, 176–77, 184–85, 189, 286–89, 300.) On August 11, 2023, UWorld named Tart Labs as a defendant, alleging that Tart Labs, as the illustrator of many of the illustrations on Archer Review's website, aided Archer Review in using UWorld's copyrighted medical illustrations and infringing UWorld's trade dress. (*Id.* ¶¶ 111–12, 157–58.)

For its part, Archer Review asserted two counterclaims against UWorld for business disparagement and false advertisement arising from a targeted social media smear campaign that UWorld undertook against Archer Review, mainly on Reddit, in which UWorld made a variety of false and disparaging posts regarding Archer Review. (*Id.* ¶¶ 16, 18–21, 23–28.)

**C. UWorld's Subpoenas to Leeds and Mr. Galante**

Well after UWorld filed the lawsuit, Leeds entered into discussions with Archer Review CEO Dr. Koduru about potentially acquiring an equity interest in Archer Review. Leeds ultimately acquired a majority interest in Archer Review from Dr. Koduru and his wife, and the transaction was publicly announced on October 28, 2024—roughly 18 months ***after*** the UWorld/Archer Litigation was filed. (Ex. 3, Press Release.)

Within days of that announcement, UWorld began to demand broad and invasive discovery into the Leeds acquisition from both Archer Review and Leeds. These efforts included a subpoena for documents that UWorld issued to Leeds on October 30, 2024, propounding 22 separate document requests. (Ex. 4, Leeds Document Subpoena.) Notably, the vast majority of the document requests did not even make an effort to appear connected to the actual issues in the UWorld/Archer Litigation. (*See generally id.*) This was perhaps unsurprising, given that it is beyond dispute that Leeds—which had no affiliation with Archer Review at any relevant period—had no involvement in any of the events underlying the claims and/or defenses in the case. Instead,

UWorld sought nearly every conceivable document pertaining to the Leeds acquisition itself in a transparent attempt to use the discovery process to obtain business information regarding a competitor. Given the facial lack of relevance of these requests, Leeds timely served responses and objections to UWorld's subpoena on November 13, 2024. (Ex. 5, Leeds' Responses and Objections.) Despite indicating an intention to do so, UWorld has never filed a motion to compel Leeds to produce documents in response to the subpoena in the months that followed. Instead, UWorld filed a motion to compel Archer Review to produce similar documentation before the Northern District of Texas, which is currently pending. (Dkt. 202.)

On February 20, 2025, just two weeks before the close of discovery in the UWorld/Archer Litigation, UWorld without warning served two deposition subpoenas seeking testimony from both Leeds and Mr. Galante. (Ex. 6, Leeds Deposition Subpoena; Ex. 7, Leeds Notice of Deposition; Ex. 8, Galante Deposition Subpoena; Ex. 9 Galante Notice of Deposition.) Both subpoenas sought to hold the deposition of Leeds and Mr. Galante on March 7, 2025, the last day of the discovery period in the UWorld/Archer Litigation. (Dkt. 161.) The deposition subpoenas betray a similar purpose as UWorld's vain attempt to take document discovery from Leeds: UWorld hopes to explore irrelevant details about Leeds' investment in Archer Review under the guise of litigation discovery. In particular, UWorld seeks deposition testimony from Leeds regarding ten broad topics, each of which pertains to Leeds' purported "relationship" with Archer Review, its due diligence on Archer Review, and its communications with Dr. Koduru.[2] (Ex. 6, Leeds Deposition Subpoena.) On February 26, 2025, counsel for Leeds and Mr. Galante met and conferred with UWorld's counsel. During that meet and confer, counsel for Leeds and Mr. Galante

[2] During the meet and confer, UWorld's counsel indicated that it sought testimony on identical topics from Mr. Galante as it sought from Leeds.

explained that they objected to the subpoenas on the same grounds as they objected to producing documents related to these topics. (Ex. 10, February 27, 2025 Email Chain.) Counsel for Leeds and Mr. Galante further suggested that, at the very least, UWorld should wait until the disputes over its document requests pertaining to the Leeds transaction were resolved before seeking to take depositions on the same topics. Counsel for UWorld refused to withdraw the subpoenas or wait until the document disputes were resolved before demanding these depositions, thereby necessitating this motion.

## ARGUMENT

Under Federal Rule of Civil Procedure 45(d)(3), "the district where compliance is required must quash or modify a subpoena that," among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[T]he scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b)." *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, No. 14-cv-1011, 2014 WL 6472885, at *3 (D. Kan. Nov. 18, 2014). As a result, subpoenas seeking irrelevant material must be quashed. *See Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*, No. 06-cv-1501, 2007 WL 4166035, at *2 (S.D.N.Y. Nov. 20, 2007) (quashing subpoenas seeking a non-party's employment personnel records from five non-party employers since the records were "not relevant to the claim or defense of any party"). Likewise, third-party subpoenas that seek information that "is unnecessary, duplicative, and [ ] readily available from other sources … should be quashed as unduly burdensome." *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20-mc-23, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020). "Where discovery is targeted to non-parties, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the nonparty." *UMB Bank, N.A. v. Sanofi*, No. 15-cv-8725, 2017 WL 6398628, at *1 (S.D.N.Y. Nov. 22, 2017). The burden on a motion to quash rests first with the party issuing the subpoena—the issuing party "must

demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings," and only once relevance has been established must the subpoenaed party demonstrate undue burden. *Angelo, Gordon & Co.*, 2020 WL 4700910, at *2.

## I. THE SUBPOENAS SHOULD BE QUASHED

The subpoenas should be quashed for three reasons. ***First***, UWorld cannot carry its burden to show that the information it seeks to obtain is actually relevant to any claims and/or defenses in the UWorld/Archer Litigation; to the contrary, the information UWorld seeks is plainly irrelevant. ***Second***, the only even conceivably relevant information encompassed by the subpoenas would simply be Archer Review information that Leeds obtained from Archer Review in due diligence. UWorld has already sought to discuss said information with Archer Review—as it must—by deposing Dr. Koduru and taking broad discovery from Archer Review over a lengthy period. Requiring non-parties Leeds and Mr. Galante to provide such information via deposition would only impose an undue and entirely unnecessary burden upon them. ***Third***, UWorld's subpoenas should also be quashed to the extent UWorld is seeking depositions in excess of the ten-deposition limit imposed by Rule 30 without prior permission from the court overseeing the UWorld/Archer Litigation.

### A. The Subpoenas Seek Irrelevant Information

The burden is on UWorld, the party seeking discovery, to prove that the information sought in its subpoena is relevant and proportional to the needs of the case. *Cerco Bridge Loans 6 LLC v. Schenker*, No. 23 Civ. 11093, 2024 WL 4165128, at *2 (S.D.N.Y. July 16, 2024); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) ("Where a party has subpoenaed a non-party, [t]he party issuing the subpoena must demonstrate that the information sought is relevant."). Indeed, "[a] subpoena that pursues material with little apparent or likely relevance to the subject is likely to be quashed as unreasonable even where the burden of compliance would not be

onerous." *Schenker*, 2024 WL 4165128, at *2. To satisfy this standard, the requesting party must show "a concrete linkage between the discovery sought and the claims or defenses asserted in the case." *Edmonson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018).

UWorld cannot carry this burden. As noted, the UWorld/Archer Litigation is primarily a case alleging various intellectual property and business disparagement claims related to the parties' respective NCLEX-RN test preparation programs. None of the topics upon which UWorld seeks testimony relates to any of these claims or defenses. Nor could they, given that Leeds had no involvement in any of the events underlying the litigation between UWorld and Archer Review. The only relationship Leeds has to the litigation is that it purchased ownership interests in Archer Review in late 2024—years after when the relevant facts occurred between 2017 and 2022.

This Court has made clear, however, that it will quash subpoenas that seek information from non-party business partners or investors that had no involvement in the underlying conduct at issue in the claims. For instance, in *Athalonz, LLC v. Under Armour, Inc.*, No. 24 MISC. 0047 (DEH), 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024), this Court quashed a subpoena seeking documents and deposition testimony from a non-party in a patent infringement dispute. In *Athalonz*, the plaintiff sought discovery from a non-party baseball player who sponsored an allegedly infringing line of the defendant's shoes. *Id*. at *1-2. Like this case, the subpoena sought information regarding the non-party's relationship with the defendant as well as documents regarding the allegedly infringing products. *Id.* at *2-3. The Court held that the plaintiff failed to meet its burden of showing that the non-party had "relevant knowledge about the patent infringement" because the non-party had no involvement in the allegedly infringing conduct. *Id.* at *3-4.

That is the case here—it is beyond dispute that Leeds was not involved in any of the alleged misconduct and, as such, has no information relevant to the UWorld/Archer Litigation. Nor, to be fair, does UWorld even purport to seek information about the underlying misconduct by its subpoenas. Instead, UWorld's subpoenas wish to explore irrelevant aspects of Leeds' acquisition of a majority interest in Archer Review, including its "interest and/or intent in investing in or financing Archer Review," its "relationship" with Archer Review, as well as Leeds' due diligence leading up to the transaction. (*See* Topics No. 1, 2, 4, 8, 9, 10.) Such topics—which all pertain to a transaction that occurred long after the UWorld/Archer Litigation was already filed—have no bearing on the intellectual property or other claims asserted in that case. Indeed, courts have routinely rejected attempts to use subpoenas to explore the "relationship" and other unrelated transactions between parties and non-parties to a dispute. *See, e.g.*, *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD)(BCM), 2018 WL 6712769, at *4, *7 (S.D.N.Y. Nov. 30, 2018) (finding that topics for a deposition, including "[a]ll facts, circumstances, events, and financial transactions between the corporate plaintiffs in this action" and "[i]nformation regarding revenue received by [the non-party] related to any Work, Trademark, or Broadcast which is the subject of this dispute" irrelevant to underlying copyright suit).[3] The result should be the same here.

[3] *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012) (quashing 30(b)(6) deposition subpoena issued against a non-party that had a business relationship with a party to the case, and sought to discuss "any actual, proposed, or contemplated investment" in the party by the non-party); *Seven Z Enters. v. Giant Eagle, Inc.*, No. 2:17-CV-740, 2020 WL 7240365, at *2 (W.D. Penn. Mar. 6, 2020) (quashing subpoena to non-parties that "sought production of nearly every document remotely related to the companies' business relationship with" a party, because the requests were not relevant); *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107-RS (KAW), 2017 WL 6209309, at *5 (N.D. Cal. Dec. 8, 2017) (quashing deposition subpoena directed at non-party that sought to discuss "the. . . business relationship between [the non-party] and defendants" because that topic was not relevant to the underlying patent dispute).

### B. The Subpoenas Seek Information in Archer Review's (and UWorld's) Possession

The subpoenas should also be quashed as imposing an undue burden because any possibly relevant information they seek would, at most, be information from Archer Review, in Archer Review's possession, and obtainable from Archer Review through typical discovery means. It is axiomatic that, when determining whether a subpoena imposes an undue burden, courts consider "whether the requested information can be obtained from the parties themselves." *Schenker*, 2024 WL 4165128, at *5. As such, courts will quash subpoenas where "it appears that any testimony . . . [the non-party] could provide would be duplicative of discovery that [a party] may obtain from its party opponent." *See Athalonz*, 2024 WL 1555685, at *3.[4]

UWorld must look to Archer Review for the information it seeks to discuss—in fact, it already has, by deposing Dr. Koduru on many of the same topics it seeks to depose Leeds and Mr. Galante on. Judged charitably, the only topics that even touch on potentially relevant information are the topics related to Leeds' purported due diligence into various types of information from Archer Review, such as Archer Review's financial information or its intellectual property. (*See* Topics No. 4, 5, 6, 7.) But the only relevant information sought by those topics, if any, would be due diligence information that Leeds received ***from*** Archer Review about Archer Review's

---

[4] *See also Catlin Syndicate 2003 v. Traditional Air Conditioning, Inc.*, No. 17-cv-2406, 2018 WL 1459483, at *6 (E.D.N.Y. Mar. 23, 2018) (quoting Fed. R. Civ. P. 26(c)(i)) (finding it "unduly burdensome" to subpoena a third party for information that could have been requested "throughout the relevant course of discovery"); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) (noting that a defendant "is not entitled" to obtain information from a nonparty where it is possible to "obtain the information from less intrusive means"). Indeed, "[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996). Moreover, it is UWorld's burden to establish that "the materials at issue…are not reasonably obtainable from other available sources." *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 757 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013) (quashing a subpoena to a nonparty where discovery was more obtainable from other sources).

business. UWorld can and must obtain such information from Archer Review, not third parties such as Leeds or Mr. Galante. Indeed, by all accounts, UWorld already ***has*** obtained this information from Archer Review in the over twelve months of discovery that has already been taken in the UWorld/Archer Litigation, including a recent deposition of Dr. Koduru. (Dkt. 231, at 8.) UWorld has taken broad discovery from Archer Review into its intellectual property, finances, alleged conduct, and damages at issue in the parties' respective claims and/or defenses. (*Id.* at 6-7.) There is nothing that Leeds or Mr. Galante—third parties whose only involvement started after the events at issue—could add to the voluminous discovery record in the case.

The same is true with regard to UWorld's attempt to seek information regarding "[Leeds'] dealings with Karthik Koduru including all communications with Karthik Koduru leading to the closing of the investment in Archer Review" (*See* Topic No. 10). By definition, this topic seeks information within Archer Review's possession—*i.e.*, communications and "dealings" involving Archer Review's CEO. Because Archer Review was a part of that exchange, it would be in possession of such information, and as such, UWorld must seek to discuss that information with Archer Review. Indeed, UWorld's recent deposition of Dr. Koduru—the source of the information covered by this topic—provided UWorld with the opportunity to obtain any appropriate discovery it wanted to on this topic. (Dkt. 231, at 8.) To the extent that UWorld has failed to use proper discovery means to obtain that information from Archer Review, either in Dr. Koduru's deposition or otherwise, it does not give UWorld the right to burden non-parties with discovery it could have and should have obtained from Archer Review.

Finally, the two depositions sought by UWorld are not only duplicative of party discovery with Archer Review, but are also duplicative of each other, which is also grounds to quash the subpoena. *See Weiner v. Blackstone Partners, L.P.*, No. 04 Civ. 7757, 2005 WL 1560505, at *3

(S.D.N.Y. July 1, 2005). UWorld's counsel was unable to identify any information that Mr. Galante could provide that was not duplicative of the information UWorld seeks in its Rule 30(b)(6) deposition of Leeds. There is none.

### C. The Subpoenas Seek Depositions in Excess of UWorld's Ten-Deposition Limit

UWorld also may not depose both Leeds and Galante because doing so would exceed the limit on depositions imposed by Federal Rule of Civil Procedure 30(a)(2)(A)(i). Under that Rule, a party must obtain prior leave of the court before taking a "deposition [that] would result in more than 10 depositions being taken under this rule or Rule 31." Fed. R. Civ. P. 30(a)(2)(A)(i). Where a party issues subpoenas seeking to take depositions in excess of that limit without prior leave, courts have quashed the subpoenas on the grounds that they impose an undue burden. *See C.A. v. Amli at Riverbend LP*, 2008 WL 1995451, at *2 (S.D. Ind. May 7, 2008) (finding that the failure of the plaintiffs "to seek leave of the court to conduct in excess of ten depositions" imposed an undue burden on the defendants by requiring them to produce cumulative witness testimony and quashing the subpoena). It is Leeds' and Mr. Galante's understanding that UWorld has already taken nine separate depositions in the UWorld/Archer Litigation and has not obtained leave from the court in that case to take depositions in excess of the limit imposed by Rule 30. UWorld's sole argument against this point is apparently that they deposed one party, Tart Labs, twice: once with regard to issues related to personal jurisdiction, and once more with regard to the merits of the claims. But this is a distinction without a difference. Nowhere in Rule 30 does it suggest that two separate depositions of the same party are only counted as one deposition; to the contrary, it states that "a party must obtain leave of the court. . . if. . . the deposition would result in more than 10 depositions being taken ***under this rule***." Fed. R. Civ. P. 30(a)(2)(A)(i). Both Tart Labs depositions were taken under Rule 30—thus both count towards the 10-deposition limit. *Farley*

*v. United States*, No. 11CV198S, 2015 WL 3952295, at *4 (W.D.N.Y. June 29, 2015) (granting leave of the court to seek additional depositions where the plaintiff took several personal jurisdiction depositions, but noting that these were "additional depositions beyond the ten allowed"). Accordingly, absent leave from the court in the UWorld/Archer Litigation to exceed that limit, this Court should quash UWorld's attempt to take depositions in excess of that limit.

## II. ALTERNATIVELY, THE COURT SHOULD MODIFY THE SUBPOENAS

As noted, the Court should quash the subpoenas issued to Leeds and Mr. Galante and order that they are not required to sit for deposition in the UWorld/Archer Litigation. But even if the Court were inclined to hold that Leeds or Mr. Galante must sit for deposition on at least some topics, these depositions should occur, if at all, only after the various document discovery disputes between UWorld, Archer Review, and Leeds are resolved. As noted above, UWorld has moved to compel Archer Review to produce document discovery on similar topics related to the Leeds transaction. (Dkt. 202; Dkt. 231.) That motion is currently being briefed and awaiting resolution by the court in that case. Similarly, UWorld has indicated that it intends to move to compel Leeds to produce documents in response to the document subpoena it issued to Leeds on similar topics, but UWorld has not filed that motion yet. (Ex. 11, February 12, 2025 Email Chain.) Yet UWorld is demanding that Leeds and Mr. Galante sit for deposition before those disputes are resolved or any documents are produced in response to those requests. Worse still, UWorld's counsel would not confirm whether or not UWorld intended to seek additional deposition testimony from Leeds or Mr. Galante in the event the court granted the motion to compel and additional documents on these topics were produced. As such, UWorld's demand to take Leeds' and Mr. Galante's deposition now subjects them to the risk of simply receiving another deposition subpoena from UWorld after completion of document discovery. If Leeds and/or Mr. Galante must sit for deposition, it should be only once. As such, if UWorld continues to refuse to confirm that it will

not seek additional deposition testimony depending on the outcome of its discovery motions, the Court should not order Leeds or Mr. Galante to sit for deposition until those motions are resolved and any resulting document discovery is complete. *See Recoop LLC v. Outliers Inc.*, No. 24-cv-01810 (LJL), 2024 WL 4467540, at *2 (S.D.N.Y. Oct. 10, 2024) (staying discovery where a party's "request could potentially lead to two depositions"); *Leadenhall Cap. Partners LLP v. Wander*, No. 24-cv-3453 (JGK), 2024 WL 4904711, at *2 (S.D.N.Y. Nov. 26, 2024) ("Deposition discovery remains stayed pending a decision on the motions to dismiss to avoid the possibility that depositions may be sought more than once.").

## CONCLUSION

For the foregoing reasons, Leeds and Galante respectfully request that the Court enter an order quashing the subpoenas in their entirety or, in the alternative, modifying the subpoenas so that any depositions take place after the close of document discovery.

Respectfully submitted,

Dated: March 3, 2025
New York, NY

/s/ [signature]

Steven Feldman
Nathan Taylor
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steven.feldman@lw.com
nathan.taylor@lw.com

*Counsel to Non-Parties Leeds Equity Partners and Jacques Galante*

**CERTIFICATE OF COMPLIANCE**

I, Nathan Taylor, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 4,498 words in accordance with the Local Rules. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: March 3, 2025
New York, NY

Nathan Taylor
LATHAM & WATKINS LLP

*Counsel to Non-Parties Leeds Equity Partners and Jacques Galante*